## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, David Ryan, a Special Agent with the Federal Bureau of Investigation (FBI) being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief;

## INTRODUCTION AND AGENT BACKGROUND

1. Your affiant has been employed as a Special Agent of the FBI since May, 2002. Prior to working for the FBI, your affiant was employed as a police officer for West Valley City Police Department (WVCPD) from May, 1998, to May, 2002. While employed in law enforcement your affiant has investigated and assisted in the investigation of dozens of violations of laws of the United States to include the following: homicide; aggravated assault; sexual assaults of adults and children; distribution of illegal narcotics; arson; illegal possession and transportation of firearms; and white collar crimes such as fraud and embezzlement. Your affiant is currently assigned to the Vernal Resident Agency of the Salt Lake City Field Office to investigate various federal crimes, with a main focus on certain felonies committed on the Uintah and Ouray Indian Reservation. Additionally, your affiant is a member of an FBI Evidence Response Team (ERT) and has assisted with the execution of numerous search warrants. Your affiant has gained experience through seminars, classes, conferences, and everyday work, related to these types of investigations.
2. As a federal agent, your affiant is authorized to investigate violations of laws of the United States and is a law enforcement officer with the authority to execute warrants issued under the authority of the United States.
3. The statements in this affidavit are based, in part, on information provided, and evidence collected, by law enforcement officers assigned to other law enforcement agencies and information and evidence obtained personally by your affiant. This affidavit does not contain all of the information known to me or to law enforcement regarding this investigation, but rather contains only those facts believed to be necessary to obtain authorization to collect buccal swabs from James Murray Jr.
4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Murray assaulted Mariposa Santio in violation of Title 18, U.S.C., Section 113(a)(7) and 1153, Domestic Violence Assault Resulting in Substantial Bodily Injury to a Spouse or Intimate Partner, or a Dating Partner, While Within Indian Country, and that Murray's DNA contains evidence of the crime, as described in Attachment A and B.

## PROBABLE CAUSE

5. On July 8, 2022, Murray forced Santio, and her three-week-old baby, from her residence in Vernal, Utah. They had been fighting for the past few days because Murray was cheating on Santio.

6. Murray, Santio, and the baby, left Santio's residence and drove toward Randlett, Utah. Murray punched Santio repeatedly while she was driving. Once they arrived at a friend's residence in Randlett, Murray forced Santio to smoke methamphetamine with him. Murray threatened that he would kill her and her baby if she did not.
7. When they left Randlett, Murray was driving. Murray continued to assault Santio and even pulled a knife on her. Murray tried stabbing Santio but she was able to fight back and did not get stabbed. Murray repeatedly told Santio that he would drive the three of them off the road and kill all of them.
8. Murray drove toward Whiterocks, Utah, all the while punching Santio in the face. When they got to the area of the Hayden Cemetery, approximately 1500 E. 5500 N., Santio began to punch Murray. Murray put Santio in a head lock and began biting her back and hands.
9. Murray pulled Santio out of the car by her hair. Murray punched and kicked Santio while she was on the ground. Murray then left Santio in the middle of the road, taking Santio's three-week-old baby who was still in the car.
10. These constant assaults on Santio occurred throughout the day over several hours.
11. Santio walked to a nearby house and reported the incident to the homeowner, Janell Carlos, who called police. Santio was transported to the Uintah Basin Medical Center (UBMC) by ambulance. Santio's baby was recovered at the house of a relative of Murray. The baby was unharmed.
12. Murray was arrested by Bureau of Indian Affairs (BIA) officers. He was still driving Santio's vehicle. Murray had dried blood on his shirt, shorts, and left ear. He also had scratches near his right eye and on his right cheek. Murray's clothing was seized as evidence.
13. Santio's vehicle contained dried blood in the front passenger area, on the center console, and in the driver's seat area. Swabs of the blood were collected after receiving consent from Santio to search her vehicle.
14. Santio's injuries included the following: multiple deep lacerations to her upper lip and right ring finger (the finger needed stitches); broken nose; multiple superficial bite marks to both hands and seven of her fingers; five bite marks to her upper back; left eye swollen shut and bruised with a laceration from the inside corner of her eye to her upper cheek bone.
15. Both Murray and Santio are enrolled members of the UTE Indian Tribe, a federally recognized tribe.
16. Murray is currently incarcerated in the Davis County Jail.
17. Buccal swabs are needed from Murray to compare his DNA to that of the blood found on his clothing and the swabs obtained from Santio's vehicle. Collecting Murray's buccal sample will facilitate forensic comparison and/or examination of DNA recovered from Murray's clothing and Santio's vehicle.

18. Based upon the foregoing information, I submit there is probable cause to believe James Murray's DNA contains evidence of the commission of criminal offenses including violation of Title 18, U.S.C., Section 113(a)(7) and 1153.

Dated this 10th day of January, 2023.

_____
DAVID RYAN
Special Agent, FBI


_____
JARED C. BENNETT
MAGISTRATE JUDGE